UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

VICKTOR STEVENSON and GLORIA ESPINOZA,
individually, and on behalf of others similarly
situated,

                                Plaintiffs,                    Civ. Action 14 Civ. 0240 (AKH)

            -against-
                                                               Collective Action Under
CUTLER SOHO, LLC, CUTLER PARK AVENUE,                          29 U.S.C. § 216(b)
LLC, DANIRO 57TH STREETSALON NEW YORK,
LLC, RODNEY CUTLER, MICHAEL GORDON, BEN
STEWART, ANTHONY BARROW, DAVID KASTIN,
XYZ COMPANIES 1-10 (UNIDENTIFIED) and JOHN
and JANE DOES A-Z (UNIDENTIFIED),

                                Defendants.
-----------------------------------------------------------------X

TABLE OF CONTENTS FOR DECLARATION AND EXHIBITS IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SANCTIONS

Declaration of Mark L. Kalish, Esq. dated May 18, 2019

Exhibit A to Declaration: Case Management Order

Exhibit B to Declaration: Order dated March 15, 2017

Exhibit C to Declaration: Order dated May 16, 2017

Exhibit D to Declaration: E-mails exchanged between counsel

Exhibit E to Declaration: Plaintiffs' Responses To Defendants' First Set of Interrogatories

Exhibit F to Declaration: Pages from transcript of deposition of Gloria Espinoza

Exhibit G to Declaration: Pages from transcripts of depositions of Vicktor Stevenson, Amber
Coutee and Sally Laipert

Exhibit H to Declaration: Pages from transcript of deposition of Gloria Espinoza

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

VICKTOR STEVENSON and GLORIA ESPINOZA,
individually, and on behalf of others similarly
situated,

                                      Plaintiffs,

        -against-

CUTLER SOHO, LLC, CUTLER PARK AVENUE,
LLC, DANIRO 57TH STREETSALON NEW YORK,
LLC, RODNEY CUTLER, MICHAEL GORDON, BEN
STEWART, ANTHONY BARROW, DAVID KASTIN,
XYZ COMPANIES 1-10 (UNIDENTIFIED) and JOHN
and JANE DOES A-Z (UNIDENTIFIED),

                                 Defendants.
----------------------------------------------------------------X

**DECLARATION IN
OPPOSITION TO
<u>MOTION FOR SANCTIONS</u>**

**Civ. Action 14 Civ. 0240 (AKH)**

**Collective Action Under
29 U.S.C. § 216(b)**

     **MARK L. KALISH**, under penalty of perjury, declares and says:

     1. I am a member of Moss & Kalish Counsellors at Law, PLLC. Our firm represents all

the defendants in this action, other than defendant, Michael Gordon. I am fully familiar with the

facts and circumstances of this action.

     2. I submit this declaration in opposition to the application of plaintiffs to impose various

sanctions for the alleged failure of defendants to comply with discovery.

     3. Specifically, plaintiffs claim that defendants violated an order of this Court by

refusing to produce a defense witness with knowledge of the facts. Contrary to plaintiffs'

claims, and as clearly supported by the documentary evidence, defendants have <u>never</u> refused to

produce additional defense witnesses for deposition.

     4. As well, plaintiffs claim that they are entitled to sanctions because defendants

destroyed documents. As is evident from plaintiffs own submission the conclusion which

plaintiffs reach that defendants destroyed documents defies logic and is based on pure speculation.

      6. In fact, plaintiffs' motion is nothing more than a litigation tactic in response to recent developments in this litigation.   As I will detail and document below, it is grounded in a series of utterly baseless allegations which range from distortions of the truth to outright untruths. It is respectfully submitted that upon a review of the papers submitted on this motion, this Court will conclude that if anyone deserves to be sanctioned it is plaintiffs and not defendants.

**Background**

      7. In accordance with the Case Management Order issued by this Court (Exhibit A, annexed hereto) and a subsequent order of this Court dated March 15, 2017 (Exhibit B, annexed hereto)  over the course of a number of weeks defendants deposed all of the plaintiffs and plaintiffs deposed all the individual defendants.  The Defendant Rodney Cutler, testified in his capacity as representatives of the corporate defendants.

      8. In a  conversation which I had  approximately two weeks ago with Benjamin Thompson, Esq.,  a member of the firm representing the plaintiffs, after all the above depositions were concluded,  I pointed out to Mr. Thompson that, as set forth below,  none of the four plaintiffs whom our firm deposed were able to explain how the damages which they claimed to have suffered and a calculation of which they provided in certified interrogatory responses were derived.  Indeed, the concerns which I expressed to Mr. Thompson were confirmed by the Court in an order which it issued on May 16, 2017 as this declaration was being drafted.   The Court struck the interrogatory responses which purport to detail plaintiffs' damages as "conclusory and unresponsive." (Exhibit C, as annexed hereto)

9.  I further pointed out to Mr. Thompson that it was clear based on the testimony which these plaintiffs had provided, and indeed which Mr. Thompson himself had elicited when he cross-examined one of the witnesses, that the damage calculations, such as they were, were performed by either Mr. Thompson or someone in his office.   Lastly, I stated to Mr. Thompson that since that was the case, it may be necessary for me to depose either him or the person in his office who did the calculation.

10.  Notwithstanding the foregoing,  I told Mr. Thompson, both orally and in writing that, as one lawyer to another,  I was reluctant to take his deposition.  The Case Management Order issued by this Court fixed May 9, 2017 as the discovery cutoff date.   The Case Management Order also directed the parties to engage in a mandatory settlement conference on May 17, 2017.   The parties had previously engaged in what I considered to be some productive settlement discussions.

11.  In a telephone conversation on either May 1 or May 2 I made a simple suggestion to Mr. Thompson.  I proposed that we stipulate to extend the discovery cutoff date to some date past May 17, the date of the settlement conference.  In that way we could defer what was for me the unpleasant task of addressing the possibility of Mr. Thompson's deposition.  If we settled on the 17th that would end the matter.

12.  Mr. Thompson responded that he would discuss my suggestion with his clients and get back to me.  When I reached out to Mr. Thompson on May 8 he responded that he needed to speak to one more of his clients before he could respond.   The following day Mr. Thompson filed the within motion.  Patently, Mr. Thompson was just stringing me along and buying time to prepare and file this motion.

3

13. In addition shortly thereafter, I was contacted by Tim Bukher, Esq., Mr. Thompson's partner who advised me that he would be handling the case on a going forward basis, warned me that he had far less "patience" than his partner, and shortly thereafter threatened to report me to the disciplinary committee of the bar association if I contacted the Court ex parte. Mr. Bukher also indicated that he saw no further reason for delay "...a matter that has...gone one [sic] for a year too long...."

14. Patently, the filing of this motion and Mr. Bukher stepping in as the lead attorney on the case was a calculated response to my suggestion that at some point I might need to take Mr. Thompson's deposition and an attempt to pressure defendants into settling the case.

15. The email exchanges reflecting the foregoing narrative are annexed hereto as Exhibit D.

16. Mr. Bukher's complaint about the delays in the case was coming from an attorney (a) whose firm, on October 31, 2014, was denied on procedural grounds an application it made in this Court for an order of Conditional Certification of Collective Action and then delayed bringing the application again until March 2015, some five months later, when it was denied again, on procedural grounds with nothing happening in the case in the interim (b) whose firm made a third application for the same relief which was granted in part but again denied in part on May 29, 2015, and (c) whose firm delayed three and one half months, from March 3, 2016 to July 15, 2016 in responding to defendants' discovery demands. Given these self-inflicted delays of many months, Mr. Bukher's refusal to consent to a brief extension of the discovery cutoff date in the hope that the parties might resolve the case and avoid further litigation speaks volumes about plaintiffs' counsels' approach to litigating the case.

17.    Plaintiffs' approach to litigating this case is further demonstrated by the way they handled the scheduling of the defendants' depositions.

18.    In this action there are three corporate defendants.  Each of them operates a hair salon located in New York City and each is controlled by one individual, defendant Rodney Cutler.  One of the corporate defendants, Cutler Park Avenue is a hair salon comprising five chairs in a tiny location on the ground floor of a hotel.  The other two salons are of moderate size.  When scheduling depositions of the defendants, and notwithstanding the fact that Mr. Cutler was being produced as the witness on behalf of the three corporate entities,  plaintiffs' counsel initially insisted that he was entitled to depose Mr. Cutler for seven hours with respect to each of the corporate defendants for a total of twenty-one hours and on top of that to depose Mr. Cutler, individually for another seven hours.    Thus, counsel for plaintiffs  was insisting that Mr. Cutler allocate twenty-eight hours of his time over four days to these depositions and that I provide him with those dates in advance of the commencement of the depositions.

19.    This was a clear attempt to harass Mr. Cutler and keep him out of work for four days. I could not imagine that Mr. Cutler's deposition would require four full days.  I suggested that plaintiffs schedule Mr. Cutler's deposition for one day and depending on how much progress was made we could then schedule additional days if necessary.  I made it clear that as long as the questions propounded to Mr. Cutler were within the scope of what was permissible under the Federal Rules I would make him available as long as necessary.

20.    Once again what was an entirely reasonable proposal resulted in a series of emails from plaintiffs' counsel invoking the Federal Rules of Civil Procedure and threatening court intervention.  Once again plaintiffs' unnecessary tactics delayed the progress of the case. Ultimately, plaintiffs completed Mr. Cutler's deposition in about 9 hours.

21.    The Case Management Order issued by this Court provided the sequence in which the depositions in this case were to take place.   First, defendants were to depose plaintiffs.  Then plaintiffs were to depose defendants.    As such, plaintiffs' counsel's  statement at page 10 of the Memorandum of Law in Support of Plaintiffs' Motion for Sanctions that "Defendants also insisted, for no apparent reason and without any relevant precedent in the Federal Rules, that the deposition of Plaintiff's witnesses would be conducted prior to the depositions of Defendants...." cavalierly  ignores the clear language in the Case Management Order.

22.    The March 15, 2017 discovery order modified the Case Management Order somewhat but still directed that any remaining plaintiffs be deposed prior to any remaining defendants.

23.    In accordance with the Case Management Order plaintiffs' counsel produced each of the four plaintiffs for deposition.   Prior to the depositions of the plaintiffs, plaintiffs' counsel served Reponses to Interrogatories.  The Responses to Interrogatories purported to detail the damages which plaintiffs alleged to have suffered.  A copy of the Responses to Interrogatories is annexed hereto as Exhibit E.

24.    The first plaintiff to be deposed was Gloria Espinosa.    With regard to her damage claim as set forth in the Interrogatory Responses which she certified to be true and accurate, Ms. Espinosa was asked the following questions and gave the following answers:

> Q:  ...did you contribute at all in terms of computation of the damages set forth for you, Gloria Espinosa?
>
>  A.  No.
>
> Q:  Where is says annual hourly wages, seven twenty-five, do you know where that particular figure was obtained for this calculation?
>
> A:  No.

6

Q:  It says days worked, 131.  Do you know where the amount of days was gotten for this calculation?

A: No.

Q:  Where it says regular hours worked, 1,048, do you know where that was gotten for this calculation?

A.  No.

Q:  Where it says overtime hours worked, 695, do you know where that was gotten for this calculation?

A: No....

A copy of the relevant pages of the  Espinosa's deposition testimony is annexed as Exhibit F.

25.    In similar fashion, during each of their respective depositions,  the other three plaintiffs, Victor Stevenson, Amber Coutee and Sally Laipert, each of whom had also certified to the accuracy of each of their damage calculations,   had no clue as to how the damages which they were seeking were calculated.  See Exhibit G, annexed hereto.

26.    In cross-examination of Gloria Espinosa during her deposition by her attorney, Ben Thompson,  it became clear that it was Mr. Thompson or someone in his office who had done the damage calculations.  See Exhibit H.

27.    Thus, even though plaintiffs' counsel had technically complied with the Case Management Order when he produced each of the plaintiffs for deposition, plaintiffs' counsel knew full well that none of the plaintiffs had done any of the damage calculations and could not shed any light on the damage issue.   That information which was obviously crucial to the defense of the action was only available by deposing the person who had done the actual calculations.

7

28.  In view of the total inability of the plaintiffs to explain how they calculated their damages, I asked that plaintiffs' counsel produce a witness who was able to provide this information.   As previously noted, the deposition testimony indicated that the person who had done these calculations was a member of the law firm representing the plaintiffs in this action. But if that person was someone else, that was fine too.  Whoever that person might be, plaintiffs' counsel refused to produce him.

29.  I wrote to counsel for plaintiff and told him that defendants would consider producing an additional defense witness as he had requested immediately after defendants were able to complete their depositions by deposing someone who had knowledge with regard to the damage calculation.   See Exhibit 15 annexed to the moving papers.   At no time did I state that I would not produce additional defenses witnesses.

30.  Thus, Mr. Bukher is, at best, telling the Court a half-truth when he claims that defendants declined to produce additional witnesses for deposition.  The documentary evidence is to the contrary.

31.  Moreover, in the March 15, 2017 Order this Court closed discovery.   The closing of discovery by the Court bars the plaintiffs from deposing anyone else.   If plaintiffs believe that the Court should permit additional discovery their remedy is by way of a motion to compel and not a motion for sanctions.

32.  Lastly, Mr. Bukher contends that … "Defendant's assertive refusal to provide a witness with knowledge of their employee record-keeping prevents and therefore severely prejudices, Plaintiffs' ability to litigate…." the case on behalf of plaintiffs. See Memorandum of Law at Page 15. Based upon that assertion he asks that the Court draw an adverse inference that defendants have failed to maintain adequate records.

8

33.  If what plaintiffs seeks is an adverse inference as a result of defendants' alleged failure to provide a witness with knowledge of the facts, then plaintiffs would necessarily have to agree that the production of witnesses who have zero knowledge concerning their damages combined with the refusal of plaintiffs to provide a witness who can testify as to damages equally, if not more, prejudices the defendants and merits a finding that plaintiffs, in fact, have no damages.

35.  In any event, given plaintiffs refusal to provide a witness on the crucial issue of damages, plaintiffs are in no position to seek sanctions on the alleged grounds that defendants did not produce a witness who had knowledge of the record keeping practices of defendants.

**The Claim of Document Destruction**

30.  Plaintiffs also contend that with respect to each plaintiff defendants were required to maintain and preserve various documents containing specific information with regards to hours worked, wages, overtime hours, tips etc.  See Memorandum of Law at page 18.  Plaintiffs then point to the testimony of defense witnesses on the subject of record keeping and the production of documents made by defendants (Exhibit 17 to the Declaration of Benjamin S. Thompson) and ask this Court conclude that defendants must have destroyed documents and therefore defendants should be sanctioned.

36.  There is no basis for the Court to reach such a conclusion.  The proposition, advanced by plaintiffs defies logic and, in fact,  borders on the absurd.

37.  As reflected in the quoted testimony of the defense witnesses contained in plaintiffs' Memorandum of Law, virtually all the questions which counsel for plaintiffs asked them dealt with broad issue of record keeping.  At no point in the examination did counsel ask specifically and with respect to each plaintiff  whether the specific types of record described at page 18 of

Plaintiffs' Memorandum of Law were maintained by defendants.    Nor did counsel ask during what period of time they were, in fact, maintained.    Some of the time period covered by these claims date back as much as three years prior to the filing of this litigation.

38.  It is respectfully submitted that unless counsel is able to point to deposition testimony in which defense witnesses admitted that the corporate defendants during a specific period of time, maintained specifically described documents, and that, in fact, there was a mechanism by which those documents were preserved, any claim that the failure of such documents to be produced means that they were destroyed makes no sense.   It is clear that plaintiffs are unable to make this connection.

39.  Thus the broad statement in at page 22 of plaintiffs' Memorandum of Law that "…Where Defendants claim to have maintained employee records but failed to produce such records that Court can and should assume such records were destroyed…." is meaningless. Unless those employee records have been identified with specificity there is simply no way that plaintiffs can claim that they existed in the first place and exactly what happened to them.

40.  Plaintiffs,  pointing to the deposition testimony of defendants' principal owner, Rodney Cutler,  further  seek to mislead the Court by suggesting that he failed to preserve and "…likely…" destroyed relevant records.  Plaintiffs' Memorandum at Page 23.   In fact nothing in Mr. Cutler's testimony quoted on that page of the Memorandum of Law or anywhere else warrants that conclusion.

41.  Mr. Cutler specifically testified that "…I certainly did not tell anyone to destroy anything…."Plaintiffs' Memorandum of Law at Page 23.   A yet broader fair reading of the testimony reflects the mindset of someone who was focusing on other issues.  In no way does

that testimony warrant the conclusion reached by plaintiffs and advanced in this application that Mr. Cutler affirmatively destroyed relevant documents.

42. As reflected in Exhibit 17 to the Declaration of Benjamin Thompson, defendants produced approximately 250 pages in response to the plaintiffs' demands for documents. Defendants have advised plaintiffs that the documents produced constitute all the documents which they have been able to locate to date that are responsive to the document demand served by plaintiffs, other than those demands which defendants deemed improper. Even the most cursory examination of those documents reflects that they do in fact, contain information which is relevant to the issues in this case in form of time records and pay stubs.

43. It is respectfully submitted that the task of determining whether and to what extent these documents meet the requirements of law belongs to the Court, at a trial of this action. The task does not belong to the plaintiffs in the context of a sanctions motion which borders on the frivolous. Plaintiffs' attempts, based on flimsy evidence and distortions of the truth, to intimidate defendants into settling this case based on a threat of sanctions should be rejected by this Court.

**WHEREFORE,** it is respectfully requested that the application for sanctions be denied in all respects.

MARK L. KALISH

Dated: New York, New York
May 18, 2017

M&K3\CLIENTS\CUTLER\DECLARATON.INOPP.TO.SANCTIONS.5182017

11