Stevenson et al v. Cutler, et al – 14-cv-0240 (AKH)
Opposition to Plaintiffs' Motion for Sanctions

# EXHIBIT G

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------x

VICKTOR STEVENSON and GLORIA ESPINOZA, individually, and on behalf of others similarly situated,

                        Plaintiffs,
                        Civil Action No.
              14 Civ. 0240 (Hellerstein, J.)

  -against-

CUTLER SOHO, LLC, CUTLER PARK AVENUE, LLC, DANIRO 57TH STREET SALON NEW YORK, LLC, RODNEY CUTLER, MICHAEL GORDON, BEN STEWART, ANTHONY BARROW, DAVID KASTIN, XYZ COMPANIES 1-10 (UNIDENTIFIED) and JOHN and JANE DOES A-Z (UNITIFIED),

                        Defendants.

------------------------------x

                    122 East 42nd Street
                    New York, New York

                    April 4, 2017
                    10:05 A.M.

       DEPOSITION of VICKTOR STEVENSON, one of the Plaintiffs in the above-entitled action, taken by the attorney for the Defendants, Cutler Soho, LLC, Cutler Park Avenue, LLC, Daniro 57th Street Salon New York, LLC, Rodney Cutler, Ben Stewart, Anthony Barrow and David Kastin, pursuant to Federal Case Management Order, held before Andrea Bloecker, a Notary Public within and for the State of New York, at the above time and place.

**ORIGINAL**

516-485-2222        BEE REPORTING AGENCY, INC.        212-327-3500

```
 1                    VICKTOR STEVENSON                    48
 2     A      I don't know.
 3     Q      What information does David Kastin have
 4  concerning your claim?
 5     A      I don't know.
 6     Q      Who is Carissa Joseph?
 7     A      She used to be secretary there, Cutler.
 8     Q      What information does she have concerning your
 9  claim?
10     A      She would probably have some kind of insight
11  to like how long we worked there, but I don't -- I don't
12  know.
13     Q      Who is Melinda Cuevas-Ayassi?
14     A      Secretary.  She was a front desk lady
15  person.
16     Q      What information does she have concerning your
17  claim in this case?
18     A      I don't know.
19     Q      Mr. Stevenson, before you signed your name to
20  this document on March 24, did you look at the
21  document?
22     A      Briefly.
23     Q      Did you review any of the information in the
24  document?
25     A      Briefly.  I was actually busy at the time and
```

```
 1                    VICKTOR STEVENSON                    49
 2    I just signed it, but I reviewed it and took a look at
 3    it.
 4        Q    Take a look at the response to interrogatory
 5    number two.
 6        A    Two.
 7        Q    If you skip down to the response, you see your
 8    name over there?
 9        A    Yes.
10        Q    Then you have a bunch of numbers, is that
11    correct?
12        A    Yes.
13        Q    Do you know where those numbers came from?
14        A    These numbers I gave to my lawyer.
15        Q    You gave him a number of days worked that was
16    348 days, is that right?
17        A    I don't recall that.  I want to say yes.
18        Q    It says days worked, and it says 348, is that
19    right?
20        A    Yes.
21        Q    Is this a number that you provided to your
22    attorney?
23        A    Yes.
24        Q    Where did you get that number?
25        A    That I don't recall.
```

```
                              VICKTOR STEVENSON                           51

  2      A      That I don't recall.
  3      Q      Do you have any recollection at all as to the
  4   process that you used to come up with the number 2320?
  5      A      I don't.
  6      Q      Do you have any records which would help you
  7   substantiate the number 2320 as the number of regular
  8   hours that you worked?
  9      A      Everything that I have is in my lawyer's
 10   possession.
 11      Q      What does your lawyer have?
 12      A      That I don't recall.
 13      Q      What documents did you give your lawyer that
 14   would help substantiate the regular hours worked at
 15   2320?
 16      A      I don't recall.  It's been a long time.
 17      Q      I'm going to leave a space in the deposition,
 18   okay, and what I'm going to ask you to do is tell me in
 19   that space what documents, if any, you provided to your
 20   lawyer that substantiate the regular hours worked number
 21   of --
 22      A      Oh, I'm sorry.
 23      Q      -- 2320 hours.
 24      A      I'm sorry.  I gave them paychecks.  I want to
 25   say pay stubs and corresponding e-mails back and forth
```

|    |   |   |
|----|---|---|
| 1  | VICKTOR STEVENSON | 52 |

2  with management to come up with those numbers.
3  (Insert_____)
4      Q    Did the pay stubs set out the number of hours
5  that you worked?
6      A    They do not.
7      Q    Do the paychecks set out the number of hours
8  that you worked?
9      A    I don't recall.
10     Q    The e-mails that you're referring to describe
11 what?
12     A    Like the one you showed me earlier as far as
13 me working the entire week.
14     Q    How did those e-mails help you determine that
15 you worked a total of 2320 hours?
16     A    I don't know.
17     Q    Just so I'm clear, when you say regular hours
18 worked 2320 hours, does that describe the total number of
19 hours that you worked while you were employed by the
20 Cutler salons?
21     A    I don't recall.
22     Q    You don't know whether it describes the total
23 number of hours that you worked, is that right?
24     A    Are you asking me is that from the
25 beginning --

```
 1                          VICKTOR STEVENSON                    53
 2       Q       From the beginning until you left.
 3       A       Yeah, I'm gonna say yes.
 4       Q       So your testimony is that the total number of
 5   days that you worked while you were employed at Cutler
 6   was 348 days, correct?
 7       A       Yes.
 8       Q       Your testimony is that during those 348 days
 9   the total number of regular hours that you worked was
10   2320 hours, is that correct?
11       A       Yes, if not more.
12       Q       Well, is it 2320 hours or is it more than 2320
13   hours?
14       A       I'm not sure.
15       Q       When you say regular hours worked, what are
16   you referring to?
17       A       Time spent at the salon.
18       Q       What do you mean by the word regular?
19       A       Just working consistently, on a consistent
20   basis.
21       Q       Do you see that the next line has the work
22   overtime in it?
23       A       Yes.
24       Q       Do you understand what overtime means?
25       A       Yes.
```

|   |   | VICKTOR STEVENSON | 55 |
|---|---|---|---|

1  
2  for the overtime hours that you worked?  
3  A    I don't recall off the top, but I'm sure it's  
4  the addition of all the extra hours I worked in a given  
5  day.  
6  Q    By extra hours, you mean --  
7  A    After eight hours a day.  
8  Q    Mr. Stevenson, if I take 2320 hours and I  
9  divided it by the number of days that you worked, which  
10 is 348, what number do we come up with?  
11 A    Six.  
12 Q    Six point six hours, is that correct?  
13 A    Yes.  
14 Q    So my question is, the number that you put in  
15 for overtime hours worked, is that time beyond the 6.6  
16 hours that you worked?  
17 A    I don't understand.  
18 Q    You indicated that you worked 348 days and  
19 that the total hours worked were 2320 hours?  
20 A    Right.  
21 Q    So that averages out to about 6.6 hours a day.  
22 A    Okay.  
23 Q    When you calculated your overtime hours  
24 worked, was that off a 6.6 hour day or an eight hour  
25 day?

```
 1                        VICKTOR STEVENSON                    56
 2       A      I don't recall.
 3       Q      How did you come up with the 1856 hour number
 4   for overtime?
 5       A      I don't recall, but as I mentioned earlier,
 6   it's just the addition of extra hours worked on a given
 7   day total for a week.
 8       Q      Extra hours above the 6.6 hours that you
 9   worked --
10       A      Above the eight hours a day. Above the 40
11   hours a week. That's what I'm basing it on.
12       Q      Did you do any kind of calculation which led
13   you to determine that you worked 1856 overtime hours
14   while you were working at Cutler?
15       A      I don't recall.
16       Q      The numbers that appear in this response to
17   interrogatory, are these numbers that you provided to
18   your attorney?
19       A      Yes.
20       Q      You personally did these calculations, is that
21   your testimony?
22       A      I don't recall.
23       Q      Do you know what spread of hours pay means?
24       A      No.
25       Q      Do you see next to spread of hours it says
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

VICKTOR STEVENSON and GLORIA ESPINOZA, individually, and on behalf of others similarly situated,

                                   Plaintiffs,
                         Civil Action No.
             14 Civ. 0240 (Hellerstein, J.)

     -against-

CUTLER SOHO, LLC, CUTLER PARK AVENUE, LLC, DANIRO 57TH STREET SALON NEW YORK, LLC, RODNEY CUTLER, MICHAEL GORDON, BEN STEWART, ANTHONY BARROW, DAVID KASTIN, XYZ COMPANIES 1-10 (UNIDENTIFIED) and JOHN and JANE DOES A-Z (UNITIFIED),

                                  Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

                       122 East 42nd Street
                       New York, New York

                       April 5, 2017
                       10:02 A.M.


           DEPOSITION of AMBER COUTEE, one of the Plaintiffs in the above-entitled action, taken by the attorney for the Defendants, Cutler Soho, LLC, Cutler Park Avenue, LLC, Daniro 57th Street Salon New York, LLC, Rodney Cutler, Ben Stewart, Anthony Barrow and David Kastin, pursuant to Federal Case Management Order, held before Andrea Bloecker, a Notary Public within and for the State of New York, at the above time and place.

**ORIGINAL**

```
 1                    AMBER COUTEE                        67
 2   two possibilities, one is that it's the result of some
 3   kind of process that you went through, some kind of
 4   calculation --
 5       A     Yes.
 6       Q     -- and the other is that you just sort of
 7   pulled these numbers based on some estimate or some
 8   guess?
 9             My question is, did you go through any kind of
10   process to arrive at these numbers or is this just an
11   estimate or a guess?
12       A     I went through a process.  I provided
13   information.
14       Q     Describe for me the process that you went
15   through in order to get at these numbers.
16       A     Multiple things so I don't recall.
17       Q     You can't tell me as you sit here today what
18   process you went through in order to get at these
19   numbers, is that your testimony?
20             MR. THOMPSON:  I'm going to object
21             because part of this process is privileged.
22       Q     Not the part that your lawyer did, okay.
23   Personally, is it your testimony that you do not recall
24   what process you went through in order to get at these
25   numbers?
```

```
1                    AMBER COUTEE                           68
2       A      I know how many hours I worked every single
3  day that I worked there, and I provided that
4  information.
5       Q      How does the number of hours that you worked
6  every single day help produce these numbers?
7       A      I'm -- I don't know.  I'm gonna say adding
8  them up.
9              MR. KALISH:  I need one minute.  I'll be
10             right back.  Don't move.
11             (Whereupon, there was a short break in
12             the proceeding from 11:38 A.M. until 11:39
13             A.M.)
14      Q      If you take a look at the days worked you see
15 that that's 342?
16      A      Yes.
17      Q      You see the regular hours worked is 2,280, is
18 that correct?
19      A      Yes.
20      Q      Is it the case that your claim is that over
21 the 342 days that are in question you worked 2,280, what
22 you call, regular hours, is that correct?
23      A      Of just the regular hour?
24      Q      Yes.
25      A      Yes, plus some.  Is that what you're trying --
```

```
 1                       AMBER COUTEE                      69
 2      Q      Let's just focus on the regular hours.
 3      A      Okay.
 4      Q      Is it a fair statement that based on the
 5   information that you're providing in this document your
 6   claim is that you worked 2,280 hours over the course of
 7   the 342 days, is that correct?
 8      A      Yes.
 9      Q      You testified previously that you believe that
10   the term regular means an eight hour day, is that
11   correct?
12      A      Would that be -- I don't know.
13      Q      Eight hour day, forty-hour week.
14      A      Okay.
15      Q      Okay?
16      A      Yes.
17      Q      Ms. Coutee, what I'm going to do is I'm going
18   to take the 2,280 hours and I'm going to divide it by 342
19   days.
20      A      Okay.
21      Q      What is the result?
22      A      Six point six.
23      Q      Did you work 6.6 regular hours each day that
24   you worked at Cutler?
25      A      Only, like total?
```

```
 1                        AMBER COUTEE                        70
 2      Q      Just regular hours.
 3      A      Yes, I worked for sure those six hours plus.
 4      Q      You worked more than 6.6, right?
 5      A      Yes.
 6      Q      Can you tell me why it is that when I do this
 7   calculation the number of the regular hours that you
 8   worked comes out to be 6.6 hours?
 9      A      I don't know.
10      Q      Do you know whether if the calculation of the
11   regular hours worked comes out to be 6.6 hours whether
12   that in any way affects the calculation of the overtime
13   that you're claiming?
14      A      I don't know.
15      Q      Do you know what spread of hours means?
16      A      I don't know.
17      Q      Do you know where the number $2,479.50 came
18   from?
19      A      I don't recall exactly.
20      Q      Did you provide your attorney with any
21   information relating to the calculation of the spread of
22   hours?
23                   MR. THOMPSON:  Objection.
24                   Don't answer that.
25      Q      When you reviewed this document, which you
```

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

VICKTOR STEVENSON and GLORIA ESPINOZA, individually, and on behalf of others similarly situated,

                                                  Plaintiffs,
                                         Civil Action No.
                           14 Civ. 0240 (Hellerstein, J.)

        -against-

CUTLER SOHO, LLC, CUTLER PARK AVENUE, LLC, DANIRO 57TH STREET SALON NEW YORK, LLC, RODNEY CUTLER, MICHAEL GORDON, BEN STEWART, ANTHONY BARROW, DAVID KASTIN, XYZ COMPANIES 1-10 (UNIDENTIFIED) and JOHN and JANE DOES A-Z (UNITIFIED),

                                                  Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                  122 East 42nd Street
                                  New York, New York

                                  April 3, 2017
                                  9:57 A.M.

        DEPOSITION of SALLY LAIPERT, one of the Plaintiffs in the above-entitled action, taken by the attorney for the Defendants, Cutler Soho, LLC, Cutler Park Avenue, LLC, Daniro 57th Street Salon New York, LLC, Rodney Cutler, Ben Stewart, Anthony Barrow and David Kastin, pursuant to Federal Case Management Order, held before Andrea Bloecker, a Notary Public within and for the State of New York, at the above time and place.

**ORIGINAL**

```
                         SALLY LAIPERT                    48
1
2    knowledge?
3       A      Yes.
4       Q      Please turn to page four.  I want to direct
5    your attention specifically to the numbers that appears
6    directly below your name.
7       A      Yes.
8       Q      Do you see that there's a line called regular
9    hours worked?
10      A      Yes.
11      Q      There's a number next to that line, is that
12   correct?
13      A      Yes.
14      Q      That number is 440?
15      A      Yes.
16      Q      Can you tell me how that number was derived?
17      A      No.
18      Q      Did you provide your attorneys with any
19   information which would permit them to calculate this
20   number?
21                  MR. THOMPSON:  Objection.  It's
22              privileged.
23                  Don't answer that.
24                  MR. KALISH:  It's actually not
25              privileged, but that's okay.
```

```
1                      SALLY LAIPERT                        51
2      Q     Did you have any records which supported this
3 calculation of 407 hours of overtime worked?
4      A     No.
5      Q     Take me through the process which led you to
6 the conclusion that you worked 407 hours overtime.
7      A     (No response)
8            MR. THOMPSON:  If you don't understand
9            the question, it's fine.
10     A     I'm not really sure how to word that.
11     Q     I'm trying to understand, Ms. Laipert, how you
12 got to the 407 hours.  Why is it 407 hours as opposed to
13 500 hours or 200 hours, or 300 hours?
14     A     Why, I don't know.
15     Q     It could have been more than 407 hours, is
16 what you're testifying?
17     A     Possibly.
18     Q     It could have been less than 407 hours, is
19 that possible?
20     A     It's possible.
21     Q     Prior to signing your name to this document,
22 did you at any point sit down and do any kind of written
23 calculation which assisted you in arriving at the 407
24 hours number?
25     A     No.
```

| | | |
|---|---|---|
| 1 | SALLY LAIPERT | 53 |

2           damages, I'm entitled to know it.
3                MR. THOMPSON:  Ask the question
4           properly.
5      Q    What is the basis for your determination that
6  you're owed $471.25 on account of spread of hours
7  claimed?
8      A    How many days I worked over 10 hours.
9      Q    Did you sit down at some point in time and
10 figure out how many days you worked over 10 hours?
11     A    No.
12     Q    Is this number of $471.25 basically an
13 estimate of how many days you worked over 10 hours?
14     A    Yes.
15     Q    Would it be fair to say that it's your best,
16 sort of, guess as to how many days you worked over 10
17 hours?
18     A    Yes.
19     Q    In fact, would it be fair to say that all
20 these numbers that appear are really sort of your best
21 guess as to what you're owed on account of the various
22 wage violations, would that be a fair statement?
23     A    Yes.
24     Q    To be clear, you have no records which would
25 substantiate any of these numbers, is that correct?

```
 1                    SALLY LAIPERT                      54
 2     A     Yes.
 3                 MR. KALISH:  Why don't we take a couple
 4           minutes.
 5                 (Whereupon, there was a short break in
 6           the proceeding from 11:20 A.M. until 11:29
 7           A.M.)
 8     Q     Miss Laipert, during the break in the
 9  deposition, did you have any conversations with your
10  attorney concerning your testimony?
11     A     No.
12                 MR. KALISH:  Let's mark this as the next
13           exhibit.
14                 (Whereupon, an employee hours was marked
15           as Laipert Exhibit E, for identification, as
16           of this date.)
17     Q     I'm going to put in front of you what has been
18  marked as Laipert Exhibit E.
19           By the way, before we do that, when you were
20  working in Illinois in the salon, were you required to
21  purchase any tools or equipment or stuff like you
22  purchased when you were working at Cutler?
23     A     There was no requirement, no.
24     Q     Did you ever purchase tools?
25     A     Yes.
```