UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VICKTOR STEVENSON and GLORIA ESPINOZA, individually, and on behalf of others similarly situated.<br><br>         *Plaintiffs*,<br><br>– against –<br><br>CUTLER SOHO, LLC, CUTLER PARK AVENUE, LLC, DANIRO 57TH STREET SALON NEW YORK, LLC, RODNEY CUTLER, MICHAEL GORDON, BEN STEWART, ANTHONY BARROW, DAVID KASTIN, XYZ COMPANIES 1–10 (UNIDENTIFIED), and JOHN AND JANE DOES A–Z (UNIDENTIFIED),<br><br>         *Defendants*. | Civ. Action No.: 14-cv-0240 (AKH)<br><br>Collective Action Under<br>29 U.S.C. § 216(b)<br><br>ECF Case<br><br>Magistrate Judge James L. Cott |

## REPLY DECLARATION OF BENJAMIN S. THOMPSON IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF ATTORNEYS' FEES AND REIMBURSEMENT EXPENSES

THOMPSON BUKHER LLP
75 Broad Street, Suite 2120
New York, New York 10004
(212) 920-6050

*Attorneys for the Plaintiffs*

BENJAMIN S. THOMPSON, under penalty of perjury, declares and says:

1. I am an attorney licensed to practice law in the State of New York and before the bar of the Southern District of New York. I am a partner at the law firm of Thompson Bukher LLP ("Plaintiffs' Counsel") and counsel to plaintiffs Vicktor Stevenson, Gloria Espinoza, and all similarly situated plaintiffs (the "Plaintiffs").

2. I write this Declaration in response to the Declaration of Mark L. Kalish in Opposition to Plaintiffs' Motion for Attorneys' Fees, dated July 7, 2017, which addresses numerous substantive issues in baseless, conclusory fashion—and in many instances, plainly false and misleading statements—in order to seek sympathy from the Court while determining the appropriate fee award under the instant motion.

3. I write further in response to the Declaration of Rodney Cutler in Opposition to Plaintiffs' Motion for Attorneys' Fees, which similarly asserts conclusory, self-serving statements that have no place in the instant motion other than to improperly influence the Court.

4. Plaintiffs' confidence in their claims have never staggered, and their willingness to settle for a significant portion of actual damages at the onset of this action only indicates that all Plaintiffs truly sought was to be paid what they were owed.

5. Plaintiffs in no way relied on defendants' unlawful and irresponsible record-keeping practices in bringing this action, and had no idea of defendants' abysmal conduct prior to discovery in this action. Indeed, it was defendants who sought to conceal their violative actions as long as possible. Conversely, Plaintiffs would have only benefitted from defendants' proper record-keeping as it would have (a) caused them to be paid properly while employed, or (b) assisted in expediting the quantification of damages owed to them.

6. In a blatant attempt to mislead the Court, defendants continue to disingenuously assert that the plaintiffs were unable to express the damages owed to them. It is nonsensical that plaintiffs would be expected to calculate legal damages, and defendants purposely failed to ask plaintiffs the questions they would know the answers to—specifically: when they worked and how many hours per day they worked—which would have quantified damages to the extent plaintiffs would reasonably be expected to quantify them. Instead, defendants' counsel persisted with questioning about legal calculations, liquidated damages, spread of hours, and other legal bases of damages that are properly discussed among counsel rather than with the plaintiffs themselves.[1]

7. Further, Mr. Kalish furnishes and purports to rely upon a document that he alleges insufficiently calculates damages of the plaintiffs, when a subsequent document was provided to Mr. Kalish that very clearly steps through plaintiffs' calculation of damages and directly addresses the questions that Mr. Kalish raises in his declaration. That document was even provided again in this motion sequence as Exhibit 19 (annexed to the moving brief).

8. Mr. Kalish states that it was not the Court's advisory that prompted defendants to settle, but instead the economic uncertainties of litigation, which is preposterous given the context of this action and the conflicts and inconsistencies that he presents in his opposition.

9. Defendants make false and misleading statements to the Court regarding plaintiffs' alleged delays in litigating this matter, which they have stated before, by claiming that "Plaintiff [*sic*] took no action [between October 31, 2014 and March 2015]" (Defs. Opp. Mem., p. 9); and

---

[1] Notably, Rodney Cutler, the primary defendant in this action, was at three of the four plaintiffs' depositions, sitting directly across from them, leaning across the table, and staring directly at them. At his own deposition, Mr. Cutler stated that he would have attended the fourth deposition had his counsel informed him that it was occurring.

that Plaintiffs did not respond to defendants' Second Set of Requests for the Production of Documents until July 15, 2016, "over four months [after they received them]," when actually:

- A revised Proposed Notice of Lawsuit (the "Notice") was sent to Mr. Kalish for consent on November 17, 2014. Mr. Kalish failed to respond at all.

- A follow up to that communication was sent to Mr. Kalish on November 21, 2014 asking for his office to expedite review of the Notice. Mr. Kalish, again, failed to respond at all.

- Mr. Kalish failed to respond until December 16, 2014, at which point he rejected very minor modifications that could have taken no longer than 10 minutes to review.

- Another revised Notice was sent to Mr. Kalish for consent on January 9, 2015. Mr. Kalish, again, failed to respond at all.

- A follow up to that communication was sent to Mr. Kalish on January 14, 2015. Mr. Kalish, again, failed to respond at all.

- Another follow up to that communication was sent to Mr. Kalish on January 21, 2015. Mr. Kalish responded that day that he did not consent to the Notice.

and

- On March 28, 2016, plaintiffs' counsel reengaged in discussions with Mr. Kalish that had begun in November 2015 relating to mediation and settlement.

- On March 29, 2016, communication was sent to Mr. Kalish continuing discussions regarding mediation. Mr. Kalish did not respond.

- A follow up to that communication was sent to Mr. Kalish on April 6, 2016. Mr. Kalish responded on April 7, 2016, apologizing for his delay, and suggesting that we contact the Court regarding mediation.

- We contacted the Court to inquire what method it would like us to follow in order to commence mediation.

- On April 12, 2016, we communicated to Mark Kalish that we had spoken to the Court, and Mr. Kalish responded that we should draft a letter to the court regarding mediation scheduling and seek dates.

- We sent a draft letter to Mr. Kalish on April 18, 2016.

- On April 19, 2016, Mr. Kalish, on behalf of his client, suddenly rejected mediation. After 5 months of delay, which was based on Mr. Kalish's representations of a potential mediation, plaintiffs were able to resume their prosecution of this matter.

10. Mr. Kalish finally asserts that the opt-in rate of plaintiffs is indicative of defendants' payment practices. As Mr. Kalish has been repeatedly told when making this statement directly to plaintiffs, plaintiffs' counsel spoke to at least fourteen (14) former and current employees of defendants who declined to participate for one reason only: fear of retaliation by Rodney Cutler (even former employees were fearful that Mr. Cutler would take efforts to prevent them from working anywhere in New York).

11. Mr. Cutler declares under penalty of perjury that the plaintiffs were paid more than required to be by law, and that "multiple witnesses would have confirmed that the hair salons were not even open for business during the hours which these plaintiffs claimed to have worked." Mr. Cutler has had over three years to present evidence or so much as mention such "multiple witnesses," but has failed to proffer even the slightest inkling of any such support except for this declaration.

12. Moreover, as is replete in the depositions of Mr. Cutler, he was so utterly disconnected from and uninformed of the day-to-day operations of the defendant establishments that his declaration has no value whatsoever. Defendants refused to produce a more knowledgeable deponent—a most telling action—and the only deponent who had any knowledge whatsoever of the day-to-day operations of defendants, Ben Stewart, confirmed most if not all of plaintiffs' assertions.

13. The partners of this law firm have abundant experience with employment, labor law, and civil rights matters, and routinely counsel clients on employment matters including wager, categorization, termination, discrimination, and other civil rights issues. I, as an associate at Oved & Oved LLP, while not appearing on, worked extensively on many FLSA matters, including, but not limited to, Santillan v. Henao, 822 F.Supp.2d 284 (SDNY 2011), Gurung v. Mahlhotra, 851

F.Supp.2d 583 (SDNY 2012), and Kahlil v. Original Old Homestead Restaurant, Inc., 657 F.Supp.2d 470 (SDNY 2009). Michael Feldberg, an Associate of this firm, was admitted to the bar of the State of New York in June 2016, was admitted to the Southern District of New York in July 2016. He graduated from Brooklyn Law School in 2016. He was a member of the Pro Bono Scholars program, where he worked for Legal Services NYC counseling indigent clients on civil rights matters. Mr. Feldberg was a law clerk with this firm during the summers of 2014 and 2015 and part-time during his law school tenure.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 11, 2017
New York, New York

_____
Benjamin S. Thompson